```
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE
```

<u>Theresa Trumbull</u>

    v.                                  Civil No. 14-cv-218-JD
                                          Opinion No. 2015 DNH 004
<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>Social Security Administration</u>


<u>O R D E R</u>

Theresa Trumbull seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits.  In support of reversing the decision, Trumbull contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical opinion evidence, failed to consider the record evidence, and erred in making the residual functional capacity and credibility assessments.  The Acting Commissioner moves to affirm.


<u>Standard of Review</u>

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999); <u>accord</u> <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.

§ 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev.</u>, 620 F.3d 62, 66 (1st Cir. 2010).  Substantial evidence, however, "does not approach the preponderance-of-the-evidence standard normally found in civil cases."  <u>Truczinskas v. Dir., Office of Workers' Compensation Programs</u>, 699 F. 3d 672, 677 (1st Cir. 2012).

## Background

In February of 2012, Trumbull filed an application for social security benefits, claiming a disability that began in April of 2010.  Trumbull alleged that she was disabled by fibromyalgia, multiple sclerosis, chronic lower back pain, depression, and anxiety.  She has a high school education and previously worked as a construction site cleaner and a bartender.  Trumbull was forty-nine years old at the time of her application.

### A. <u>Medical Records Evidence</u>

The medical evidence begins with records of an incident in the early morning of February 3, 2010, when a passerby found Trumbull outside and unable to walk.  She was transported by ambulance to a hospital emergency room where she said she had consumed alcohol and taken anti-anxiety medication and then went outside to look at the stars.  She fell asleep outside and had difficulty walking when she awoke.  Trumbull had knee pain due to

abrasions, bruising, and frostbite.  She was diagnosed with alcohol abuse, polysubstance abuse, and methadone withdrawal.

Trumbull saw Dr. Russell Brummett at Concord Orthopedics in March of 2010 for back pain following a car accident in February. On examination, Trumbull walked normally but slowly, had a diminished cervical range of motion, normal arm and leg strength, and tenderness along her lumbar spine.  Dr. Brummett diagnosed cervical, thoracic, and lumbosacral sprain or strain caused by the accident without neurological deficits.  He recommended physical therapy.

In May of 2010, Trumbull reported to Dr. Brummett that she had tried physical therapy but stopped because the physical therapist was not comfortable continuing due to Trumbull's low back pain.  Trumbull had a normal gait, full cervical range of motion, and was neurovascularly intact in her arms and legs.  She said that her pain was in her low back, and she had diminished lumbosacral range of motion although she had no discernible tenderness in the lumbosacral spine area.  Dr. Brummett made the same diagnosis as previously and advised Trumbull to continue home exercises.  At a follow up appointment in August, Dr. Brummett diagnosed lumbar degenerative disc disease and facet arthritis.  He scheduled cortisone injections but advised Trumbull that the relief from injections was only temporary and that she would have to make lifestyle changes to include exercise, strengthening, and conditioning for improvement.

In October of 2010, her primary care practice referred Trumbull to Pain Care Centers, where she saw a physician's assistant, Christopher Clough, for a consultation about her low back pain and neck pain.  Trumbull complained of a plethora of ills, including back pain, fevers, chills, sweats, amenorrhea, stiffness, arthritis, paresthesias, tremors, vertigo, and anxiety.  P.A. Clough performed an examination, noting that Trumbull was in no acute distress and had normal gait and station.  He found that Trumbull had normal range of motion with no joint enlargement or tenderness.  Her neurologic examination was unremarkable.  P.A. Clough assessed Trumbull with sacroiliac backache, chronic low back pain, and depression.  He prescribed Flexeril and recommended sacroiliac injections.

Examinations in November, December, and January of 2011 yielded similar results, but P.A. Clough added the pain medication, Vicodin, and tried trigger point injections in January.  In February of 2011, Trumbull reported improvement, and her examination results were similar to previous examinations.  In March, Trumbull reported back spasms, but her examination results were similar to previous results.  P.A. Clough changed Trumbull's pain medication prescription to Norco.

In May of 2011, Trumbull raised new symptoms at her appointment with P.A. Clough reporting a sudden onset of multiple joint pain.  P.A. Clough's examination showed that Trumbull was in no acute distress, had normal gait and station, had some mild or minimal spinal tenderness, and had the same test results as

4

prior examinations.  A month later, Trumbull again complained of multiple joint pains, but P.A. Clough's examination had the same results as the prior examinations.  P.A. Clough prescribed Oxycodone and Norco, pain medications.

Trumbull saw her primary care physician, Peter Cook, M.D., in July of 2011.  Dr. Cook noted Trumbull's history of right back pain following the accident in February of 2010, along with anxiety and depression.  On examination, Dr. Cook found that Trumbull was alert; in no acute distress; had normal motor function, gait, and station; was oriented in all spheres, and had appropriate affect and mood.  He assessed Trumbull with fatigue, depression, and anxiety and questioned a bipolar disorder.  He noted that she was doing well and would continue with the same medications.

Trumbull had appointments with P.A. Clough in August and September of 2011.  P.A. Clough found the same results on examination that he had found previously.  He administered trigger point injections and prescribed Roxicodone, a pain medication.

Dr. Cook and P.A. Clough referred Trumbull to a rheumatologist, Dr. John Shearman, who saw her in September of 2011.  On examination, Dr. Shearman found that Trumbull's motor, sensory, mental, and gait systems were normal.  Although she had trigger points in several parts of her body, particularly the hips, her joints had full range of motion without tenderness.  Dr. Shearman concluded that Trumbull did not have inflammatory

disease but might have fibromyalgia or pain amplification syndrome. He also noted that treatment would be difficult because of pain amplification.

In October, Trumbull reported to P.A. Clough that she was generally doing better, but she complained of the same list of symptoms. P.A. Clough found the same results on examination as he had previously.

Trumbull reported to Dr. Cook in December of 2011 that she had had a back spasm while shopping that caused her to fall forward onto her face. She said that she had continued to have spasms and went to the emergency room where she was diagnosed with a concussion. She said she was having a lot more back spasms and asked about increasing her medications. Dr. Cook's examination produced the same normal results as he had previously found, but he noted Trumbull's complaints of pain and prescribed a trial of Flexeril.

In January of 2012, Trumbull complained to Dr. Cook that she was having trouble walking. Dr. Cook noted an abnormal gait and assessed gait disturbance and paresthesia. He recommended that Trumbull have a brain MRI to rule out multiple sclerosis.[1] Trumbull continued to have follow up appointments with P.A. Clough through 2012. Although Trumbull complained of increased

---

[1] The parties' joint factual statement does not indicate that an MRI was done.

pain, the examination results remained largely the same, with normal findings.

In September of 2012, P.A. Clough referred Trumbull to Ann Cabot, D.O. for an evaluation of multiple sclerosis. At the appointment with Dr. Cabot, Trumbull complained of problems with her memory, gait and balance issues, and bad anxiety and nervousness. Trumbull also reported that she had just returned from her honeymoon in Hawaii.

Dr. Cabot found that Trumbull was alert, in no acute distress, had normal spinal mobility, full range of motion in her neck, and normal leg raising. Although Trumbull had an abnormal gait in the examination room, Dr. Cabot noted that her gait improved when she walked a longer distance to the check-out window. The mental status examination showed that Trumbull was oriented in all spheres but had difficulty with attention. Dr. Cabot found that Trumbull had an abnormal gait and thought that anxiety was a large component of Trumbull's problems. Dr. Cabot recommended a psychiatrist, yoga, and meditation.

In October of 2012, Trumbull was seen by Dr. Ashleigh Byrne who noted that Trumbull had a normal gait and station and normal head and neck alignment and mobility. Trumbull also had normal range of motion and strength in her arms and legs and full systemic muscle strength. Dr. Byrne assessed joint pain, chronic low back pain, lumbar disc displacement, hyerlipidemia, and depression.

7

B.  Opinion Evidence

John MacEachran, M.D., a state agency physician, reviewed Trumbull's records and completed a residual functional capacity assessment on May 16, 2012.  Dr. MacEachran concluded that Trumbull could lift and carry twenty pounds occasionally and ten pounds frequently; could sit, stand, or walk for about six hours in a work day, and could occasionally do postural activities.

In October of 2012, P.A. Clough completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." He checked boxes on the form that Trumbull could occasionally lift or carry up to ten pounds; could not sit, stand, or walk for more than fifteen to forty-five minutes in a work day; could use her hands occasionally for manipulative activities but could not push or pull; could never use her feet for foot controls, and could never do postural activities.  To support his findings, P.A. Clough referred generally to his treatment notes but provided no specific findings or factors to support his assessments.

P.A. Clough completed a "Medical Source Statement of Ability to Work-Related Activities (Mental)" on the same day.  He found no limitation in Trumbull's ability to carry out simple instructions, make judgments on simple work related matters, and interact appropriately.  He found that she had mild limitations in her ability to remember simple instructions and to respond appropriately in work settings but marked limitations in her ability to understand, remember, and carry out complex

8

instructions and make judgments on complex matters.  Again, Mr. Clough referred generally to his notes without any specific support for his findings.

Dr. Cook completed a form titled "Medical Source Statement-Physical" in October of 2012.  He found that Trumbull could occasionally lift and carry up to ten pounds; could sit for two hours, stand for ten minutes, and walk for ten minutes in a work day; could occasionally do manipulative activities with her hands but not push or pull; could never use her feet for foot controls; and could not do postural activities.  Dr. Cook also said that Trumbull would sometimes need a cane and would need to lie down at times.  Dr. Cook also referred generally to his treatment notes without citing any specific support.

C.  <u>Hearing</u>

A hearing on Trumbull's application was held before an ALJ in December of 2012.  Trumbull testified that she did not drive, although she had a license, because she was afraid of having a spasm while driving.  She said that her disability began when she injured herself by lifting something at work in April of 2012 and that she could no longer work because of pain and depression.  She also said she spent two-thirds of her time in bed and that she was miserable the rest of the time.  Trumbull testified to severe limitations in her activities because of physical and mental symptoms.

A vocational expert appeared and testified at the hearing. The ALJ posed a hypothetical claimant who could do work at the light exertional level but was limited to routine tasks, could tolerate only occasional workplace changes, could tolerate only occasional interaction with co-workers and no cooperative tasks, and could have no more than occasional and superficial contact with the public.  The vocational expert testified that the hypothetical claimant could not return to the work Trumbull has previously done but that there were other jobs the claimant could do.  Specifically, the vocational expert identified jobs as a night cleaner, hand packager, and laundry worker.

The ALJ issued the decision on January 11, 2013, in which he found that Trumbull was not disabled.

## Discussion

Trumbull contends that the ALJ erred in finding that her allegations of the severity of her physical and mental limitations were not credible and that she was capable of light work.  Trumbull argues that the ALJ should have given more weight to the opinions of her treating medical providers and that the ALJ failed to consider all of the record evidence.  The Acting Commissioner moves to affirm the decision on the ground that substantial evidence supports the ALJ's findings.

A. <u>Medical Opinions</u>

The ALJ is required to consider the medical opinions in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions are evaluated based on the examining relationship, the treatment relationship, the amount of supporting evidence the medical source provides, the consistency of the opinion with the record, the medical source's specialization, and other factors brought to the ALJ's attention. § 404.1527(c). A treating medical source's opinion about the nature and severity of a claimant's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(c)(2). A treating medical source is the applicant's own physician, psychiatrist, psychologist, or other acceptable medical source. 20 C.F.R § 404.1502.

The ALJ considered the medical source statements provided by Dr. Cook and P.A. Clough that ascribed severe limitations to Trumbull's physical capacity.[2] The ALJ gave those opinions little weight because the findings were provided by checks on a form without explanation and because neither the medical records generated by those providers nor the other medical records

---

[2]Although P.A. Clough is not an acceptable medical source whose opinion could be entitled to controlling weight, the ALJ did not discount his opinion on that basis. <u>See, e.g.</u>, <u>Phan v. Colvin</u>, 2014 WL 5847557, at *9 (D.R.I. Nov. 12, 2014); <u>Anderson v. Colvin</u>, 2014 WL 5605124, at *5 (D.N.H. Nov. 4, 2014).

supported those findings.  As such, the ALJ provided appropriate and adequate reasons for the weight given to those opinions.  See Disano v. Colvin, 2014 WL 5771885, at *12 (D.R.I. Nov. 5, 2014).

    B.    Credibility

It is the responsibility of ALJ to determine whether the claimant's description of her symptoms is credible.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  In making that determination, the ALJ must first determine whether the claimant has an impairment that could reasonably be expected produce the symptoms described. and, if so, whether the record evidence supports the claimant's statements.  Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996); see also Brown v. Colvin, 2014 WL 6670637, at *10 (D.N.H. Nov. 24, 2014).  The ALJ considers the objective medical evidence in the record, the claimant's statements about the intensity and persistence of symptoms, and other evidence, such as the claimant's daily activities, precipitating and aggravating factors, treatment, and medications.  20 C.F.R. § 404.1529(c).

Trumbull argues that the record includes much evidence that supports her claim of disability and that the ALJ erred in relying on only some of the record evidence.  Contrary to Trumbull's theory, "[i]t is the ALJ's prerogative to resolve

conflicting evidence, and [the court] must affirm such a determination, even if the record could justify a different conclusion so long as it is supported by substantial evidence." Vazquez-Rosario v. Barnhart, 149 F. App's 8, 10 (1st Cir. 2005) (internal quotation marks omitted); see also Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  In addition, while an ALJ must consider all of the record evidence, an ALJ need not discuss every piece of evidence in the decision. Dias v. Colvin, --- F. Supp. 2d ---, 2014 WL 5151294, at *14 (D. Mass. Sept. 30, 2014); Perry v. Colvin, 2014 WL 4725380, at *2 (D.N.H. Sept. 23, 2014).

As the Acting Commissioner points out, the ALJ primarily relied on the objective findings in the medical treatment notes to conclude that Trumbull's statements about the severity of her symptoms were not credible.  The medical records report that Trumbull had a normal gait and station and normal examination results.[3]  Trumbull cites parts of the medical records that repeat her complaints and her descriptions of her pain and limitations, which are her own subjective view of her

---

[3]There are two exceptions.  Dr. Cook noted in January of 2012 that Trumbull complained of trouble walking, and his examination showed an abnormal gait.  Two weeks later, however, P.A. Clough noted that Trumbull had normal gait and station.  Dr. Cabot noted in September of 2012 that Trumbull had an abnormal gait, but she also noted that Trumbull's gait improved when she walked a longer distance.  The next month Dr. Byrne reported that Trumbull had a normal gait.

impairments.  The ALJ concluded that the medical record showed that Trumbull's impairments were not as severe as she claimed.

The ALJ also noted that Trumbull had traveled to Hawaii for her honeymoon in September of 2012, only a few months before the hearing.  The ALJ concluded that if Trumbull's physical and mental limitations were as severe as she claimed, she would not have been able to endure the approximately eleven-hour flight each way.  In response to the ALJ's decision, Trumbull solicited a letter from P.A. Clough that explained the treatment he provided, before Trumbull left, to make the trip possible, and she relies on that evidence to refute the ALJ's analysis.  Because P.A. Clough's letter was not part of the record before the ALJ, it cannot be considered here.  Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  Further, even if the letter were properly part of the record, it would support a conclusion that with appropriate treatment Trumbull is not disabled.


### C.  Residual Functional Capacity

A residual functional capacity assessment determines the most a person can do in a work setting despite his limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).  The Acting Commissioner's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ found that Trumbull had the residual functional capacity to do light work that was limited to routine tasks. She would also be limited to work environments with only occasional changes in the workplace and only occasional interaction with co-workers and the public. The ALJ also ruled out cooperative tasks.

In making that finding, the ALJ evaluated all of the medical evidence and relied on the opinion of the state agency consultant, Dr. John MacEachran, that the ALJ concluded was consistent with Trumbull's medical records. A properly supported opinion of a non-examining consulting physician provides substantial evidence to support an ALJ's finding of residual functional capacity particularly when, as here, the capacity assessment is based on all of the medical evidence in the record. Blackette v. Colvin, --- F. Supp. 3d ---, 2014 WL 5151312, at *12 (D. Mass. Sept. 25, 2014). Therefore, the ALJ's residual functional capacity finding is supported by substantial evidence.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Acting Commissioner (document no. 7) is denied. The Acting Commissioner's motion to affirm (document no. 10) is granted.

The decision of the Acting Commissioner is affirmed. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

January 8, 2015

cc:  Christine Woodman Casa, Esq.
     Robert J. Rabuck, Esq.